**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

JOHN BERRY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

REFRESCO BEVERAGES US INC.,

Defendant.

**Case No.: 8:23-CV-02763-SPF**

---

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED <u>MEMORANDUM OF LAW</u>**

On May 2, 2025, Plaintiff John Berry ("Plaintiff[1]") moved for preliminary approval of the proposed class action Settlement Agreement[2] and for certification of the Settlement Class. Doc. 51 (the "Preliminary Approval Motion"). The Court preliminarily approved the Settlement on August 7, 2025, finding that the terms of the Settlement were "fair, reasonable, and adequate" and the Class should be given notice. Doc. # 54 (the "Preliminary Approval Order").

[1] All capitalized terms herein shall have the same meanings as those defined in Section III of the Settlement Agreement ("SA"), Doc. # 51-2.
[2] Hereinafter ("S.A.").

Plaintiff now requests that the Court:

1) Approve the Settlement as fair, reasonable, and adequate under Rule 23(e);
2) Certify the Settlement Class under Rule 23(b);
3) Appoint Plaintiff as Class Representative for the Settlement Class;
4) Appoint Nicholas A. Migliaccio of Migliaccio & Rathod LLP, and Scott D. Hirsch of Scott Hirsch Law Group, PLLC Class Counsel;
5) Find the Notice Program, as implemented, satisfies Rule 23 and due process;
6) Appoint Simpluris ("Simpluris") as the Settlement Administrator;
7) Grant Settlement Class Counsel's Motion for Attorneys' Fees and Expenses Award; and
8) Award any further relief as the Court deems just and proper.

As set forth in the Declaration of Meagan Brunner, Simpluris implemented an extensive Court-approved Notice Program, designed to effectuate maximum reach to the Settlement Class via direct Notice and the Settlement Website. *See generally, id.,* attached as **Exhibit 1** ("Admin. Decl."). Notably, the Notice Program reached more than 97% of the Class through direct notice via postal mail and the Settlement Website. *Id.* ¶¶ *10, 11.* Moreover, the response from the Settlement Class has been positive: as of October 20, 2025, a total of 331 claims have been received with no opt-outs and no objections. *Id.* ¶ 15. The Court should therefore finally approve the Settlement.

## I. INTRODUCTION

Plaintiff commenced this litigation after Defendant Refresco Beverages

US Inc. ("Defendant" or "Refresco"), disclosed that in or around March 2023, it experienced a Data Security Incident ("the Incident") that potentially allowed access to proposed Class Members' PII, including their names, dates of birth, Social Security numbers, street addresses, financial account numbers, driver's license numbers, health insurance policy numbers, and certain health information provided in connection with workers' compensation and/or ADA accommodations proceedings.

Plaintiff filed his original complaint against Refresco on December 5, 2023 (Doc. #1), and subsequently filed his amended Complaint on February 14, 2024, asserting various claims arising from the Incident. *See* Amended Complaint, Doc. # 23. Refresco initially filed a motion to dismiss Plaintiff's Amended Complaint but, later voluntarily withdrew its motion. Doc. # # 28, 31.

As discussed in detail in Plaintiff's Motion for Preliminary Approval (Doc. # 51), the Settlement provides a $650,000 non-reversionary Settlement Fund that will be used to pay for all benefits contained therein, administrative costs, and attorneys' fees and costs. S.A. § § 1.34. Moreover, the Settlement compares favorably with those in similar cases and was reached only after intensive, arms-length negotiations, and a mediation session facilitated by a neutral and experienced mediator, Bruce

Friedman, Esq. Joint Declaration ("Joint Decl.") ¶¶ 4-5. If finally approved, the Settlement will resolve all claims arising out of the Incident and will provide Settlement Class Members with the relief this litigation was filed to obtain.

Accordingly, and pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Settlement Agreement, Plaintiff respectfully requests that the Court enter an order granting final approval of the Settlement, finally certifying the Settlement Class, assigning Nicholas A. Migliaccio of Migliaccio & Rathod LLP and Scott D. Hirsch of the Scott Hirsch Law Group, PLLC as Class Counsel, and granting Plaintiff's requested Attorneys' Fees and Expenses Award.

## II. BACKGROUND

### A. Litigation Summary and Information About the Settlement

After Plaintiff filed the Amended Complaint, the Parties engaged in a full-day mediation session with Mr. Friedman on June 14, 2024, Joint Decl.¶ 4. The negotiations were hard-fought throughout and the process was conducted at arm's length. *Id.*¶¶ 4-5. After extensive post-mediation negotiations, the Parties reached an understanding in principle on the essential terms of the Settlement. *Id.* ¶ 5. The subject of attorneys' fees, costs, and expenses (i.e., the Attorneys' Fees and Expenses Award), were

discussed only after the Parties agreed upon the substantive terms of the Settlement. *Id.* ¶ 13.

Based on Plaintiff's Counsels' independent investigation of the relevant facts and applicable law, experience with numerous data breach cases, and the information provided by Refresco, Settlement Class Counsel avers that the Settlement is fair, reasonable, adequate, in the best interest of the Settlement Class, and therefore worthy of final approval.

**B. The Terms of the Settlement Agreement**

**1. The Settlement Class**

The proposed Settlement Class is defined as:

> "all persons Refresco identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach." S.A. § 1.30.

**2. The Settlement Benefits**

Under the Settlement, Settlement Class Members are eligible to receive the following benefits:

- Reimbursement of Out-of-Pocket Expenses up to $500.00;
- Reimbursement of Lost Time up to five (5) hours at $20 per hour; and
- Reimbursement of Documented Extraordinary Losses up to $5,000:

S.A. § 2.5(a)-(c).

**3. The Notice Program**

On August 7, 2025, the Court preliminarily appointed Simpluris to

be the Settlement Administrator. *See* Doc. # 54. On September 5, 2025, Simpluris commenced the Notice Program. Admin. Decl. ¶ 7. The Notice Program utilized direct notice and was disseminated via U.S. Mail to all Settlement Class Members whose addresses were available within Defendant's records. *Id.* ¶ 5-7. On September 5, 2025, Simpluris also established a Settlement Website that included information about the Settlement, related case documents, and the Settlement Agreement, as well as directions on how to submit Claim Forms electronically. *Id.* ¶ 11.

**4. Attorneys' Fees, Costs, and Expenses**

Subject to the Court's approval, Plaintiff requests an award of attorneys' fees not to exceed one-third (33.33%) of the Settlement Fund and reimbursement of reasonable Litigation Costs and Expenses. *See* S.A. § 9.1. Notably, the Parties did not discuss any issue with respect to attorneys' fees, costs, and expenses until after they had reached an agreement on Settlement Class relief. Joint Decl. ¶ 13. Settlement Class Counsel have contemporaneously filed their Motion for an Attorneys' Fees and Expenses Award in the amount of $216,666.67 and reimbursement of litigation expenses in the amount of $13,650.75. The Parties have not reached an agreement on attorneys' fees and Refresco reserves the right to contest Plaintiff's fee application.

**5. Release of Claims**

Under the Settlement, each Settlement Class Member will release:

> Any and all of the Released Claims, and will be deemed to have also released Unknown Claims. Further, upon the Effective Date, and to the fullest extent permitted by law, the Releasing Parties, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public, or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than the participation in the Class Settlement Agreement as provided herein) in which any of the Released Claims or Unknown Claims are asserted.
>
> Further, upon entry of the Final Approval Order and Judgment, the Releasing Parties shall be barred from initiating, asserting, or prosecuting against Refresco and any Released Parties any claims that are released by operation of the Class Settlement Agreement and the Final Approval Order and Judgment.

S.A. §§ 8.1-8.2.

## III. ARGUMENT

### A. Final Certification of the Settlement Class is Appropriate

As discussed briefly above, this Court provisionally certified the Settlement Class in its Preliminary Approval Order, finding that it meets the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), and the predominance requirement of Rule

23(b). *See* Doc. # 54; *see also* Fed. R. Civ. P. 23(a)(l)-(4), (b)(3); MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Since the Court's provisional certification and the Notice Program's commencement, there have been no developments that would alter its conclusion. Based on the facts and arguments stated herein and for the reasons set forth in Plaintiff's Motion for Preliminary Approval, (Doc. # 51), Plaintiff therefore respectfully submits that the Settlement Class should be finally certified.

**1. The Proposed Settlement Class Meets the Requirements of Rule 23(a).**

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of any class action settlement. Thus, in its role as a fiduciary to the absent class members, the district court must ensure the settlement is fair, reasonable, and adequate, and not the product of collusion. *See Drazen v. Pinto*, 106 F.4th 1302, 1328 (11th Cir. 2024); *see also In re Equifax Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1265 (11th Cir. 2021) (citing 4 Newberg on Class Actions § 13:40); Manual for Complex Litigation § 21.61.

During this analysis, courts "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *Id. Fla. Educ. Ass'n v. State, Dep't of Educ.*, 447 F. Supp. 3d 1269, 1275 (N.D. Fla. 2020)

(citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977) (quoting *D. H. Overmyer Co. v. Loflin*, 440 F.2d 1213, 1215 (5th Cir. 1971) ("[s]ettlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits."). Therefore, where there is no evidence of fraud or collusion, courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *City of Providence v. Aeropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *13 (S.D.N.Y. May 9, 2014), *aff'd sub. nom.*, *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

Rule 23(e)(2) therefore provides that the Court should determine whether a proposed settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief

to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2)(A)-(B) focus on procedural fairness, while Rule 23(e)(2)(C)-(D) focus on the settlement's substantive fairness. *See Kirby v. FIC Restaurants, Inc.*, 2020 U.S. Dist. LEXIS 178109, at *5-6 (N.D.N.Y. Sept. 28, 2020).

In addition, the Eleventh Circuit utilizes six (6) factors in analyzing the fairness, reasonableness, and adequacy of a class settlement under Rule 23(e), to wit:

1) the existence of fraud or collusion behind the settlement;
2) the complexity, expense, and likely duration of the litigation;
3) the stage of the proceedings and the amount of discovery completed;
4) the probability of the Class Representative's success on the merits;
5) the range of possible recovery; and
6) the opinions of the class counsel, class representative, and the substance and amount of opposition to the settlement

*Montoya v. PNC Bank, N.A.*, No. 14-20474-CIV, 2016 U.S. Dist. LEXIS 50315, at

*27 (S.D. Fla. Apr. 13, 2016) (citing *Leverso v. Southtrust Bank,* 18 F.3d 1527,1530 n.6 (11th Cir. 1994); *Bennett,* 737 F.2d at 986).

As demonstrated herein, the Settlement readily satisfies all of the Rule 23(e)(2) factors and those contemplated by the Eleventh Circuit, meets the favored public policy of resolving class action claims, and warrants the Court's final approval.

**a. The Adequacy of the Representation and the Arm's Length Negotiations.**

Plaintiff and Settlement Class Counsel have adequately represented the Settlement Class. Specifically, Settlement Class Counsel have extensive experience prosecuting data breach and privacy class action matters, no conflict exists between Plaintiff and the Settlement Class, as evidenced by the dearth of objections, and Settlement Class Counsel have negotiated an excellent result for the Class against a formidable defendant. *See e.g.*, Joint Decl. Furthermore, the Settlement was negotiated at arm's length under the supervision of Bruce Friedman, Esq., an experienced and highly respected mediator. *Id.* ¶ 4. And where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement ...counsel's informed recommendations of the agreement is persuasive that approval is appropriate." *Strube v. Am. Equity Inv. Life Ins. Co.,* 226 F.R.D. 633, 703

(M.D. Fla. 2005).[3] Thus, these factors weigh in favor of final approval.

**b. The Relief Provided to the Settlement Class is Adequate.**

The relief provided to Settlement Class Members in the instant Settlement exceeds adequacy. Although Plaintiff is confident in the merits of his case, the risks involved in prosecuting a class action through trial are significant and cannot be ignored. Joint Decl. ¶7. For example, without the Settlement, Plaintiff would have to survive class certification, disposition motions, and likely appeals of a favorable judgment. *Id.* ¶ 11.

Moreover, practically all class action cases involve an inherent level of risk, expense, and complexity, which is one reason why judicial policy so strongly favors resolving class actions via settlement. "[T]here is an overriding public interest in setting class action litigation, and it should therefore be encouraged." *In re Waifarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also In re US. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1054 (M.D. Fla. 1998). Additionally, data breach litigation is particularly risky,

---

[3] *See also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding class settlement not collusive in part because it was overseen by "an experienced and well-respected mediator"); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1318-19 (S.D. Fla. 2005) (approving settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

complex and novel. *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,* Nos. 3:08-MD-01998, 1998, 2010 U.S. Dist. LEXIS 87409, at *25-26 (W.D. Ky. Aug. 20, 2010) (approving data breach settlement, in part, because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results. In contrast, the settlement offers a reasonable resolution that properly addresses the tricky issues presented by data breaches."); *In re Sonic Corp. Customer Data Sec. Breach Litig.,* No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573, at *14 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable. This settlement, by contrast, gives immediate compensation to Settlement Class Members. Class interests are better served by settlement than continued litigation."). As a result, courts around the country are grappling with deciding what legal principles apply to the claims before it. *See In re Anthem,* 327 F.R.D. at 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in data-breach cases are novel."). Because the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled...many resources would necessarily be spent litigating substantive law as well as other issues. The early settlement of this case benefits the Plaintiff class immensely, and this factor weighs heavily

in favor of the Settlement." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 U.S. Dist. LEXIS 155137, at *7-8 (D. Minn. Nov. 17, 2015).

In addition to the previously mentioned risks, the costs associated with preparing for and litigating a trial and subsequent appeals would be significant, and would prolong this matter for an unknown duration, thereby causing the delay, if not denial, of relief to the Settlement Class. Joint Decl. ¶ 10. In contrast, the proposed Settlement provides expeditious, certain, and substantial relief to the Settlement Class without delay and is within the range of reasonableness, particularly considering the risks of continued litigation. Specifically, the Settlement is a non-reversionary $650,000 fund that compensates affected individuals for harm caused by the Incident. *See generally*, S.A. Each Settlement Class Member, who submits a timely and valid Claim Form may receive reimbursement of up to $5,000 for Documented Extraordinary Losses, $500 for Out-of-Pocket Expenses, and reimbursement of Attested Time up to five (5) hours at twenty dollars per hour. *Id.* § 2.5(a)-(c). Therefore, the Settlement Benefits in combination with the substantial costs and risks inherent in a lengthy trial (and likely subsequent appeal) of this data breach litigation support a finding that the proposed Settlement benefits are

adequate.

Moreover, the Settlement Fund allocation and method of distribution to the Settlement Class is reasonable and adequate. *See* Fed. R. Civ. P. 23(e)(C). For example, the Claims Process has thus far proven to be effective and simple. Specifically, as of October 20, 2025, 331 Claim Forms have been submitted and more are anticipated, as the deadline to submit a Claim is December 4, 2025. Admin. Decl. ¶ 15. The Settlement Administrator will also objectively determine the validity of every Claim. *Id.* As a result, no Settlement Class Member will be treated more favorably than any other.

Furthermore, "a surgeon who skillfully performs an appendectomy in seven minutes is entitled to no smaller fee than one who takes an hour; many a patient would think he is entitled to more." *Purdy v. Sec. Sav. & Loan Asso.*, 727 F. Supp. 1266, 1278-79 (E.D. Wis. 1989). In fact, "a prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." *Rates Tech., Inc. v. Speakeasy, Inc.*, 685 F.3d 163, 172 (2d Cir. 2012) (internal citations and quotations omitted). Here, the case settled early in no small part because of Plaintiff's Counsels' reputation and experience, which enabled counsel to efficiently evaluate the case's strengths and weaknesses, obtain targeted

discovery, and reach an advantageous settlement that provides the Settlement Class with nearly all the value it could receive through litigation. *See e.g.*, Joint Decl.; *see also In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 262-63 (E.D. Va. 2009) (finding that Counsel's ability to resolve the case at an early stage to be indicative of counsel's "skill and efficiency."). In sum, Final Approval is warranted.

**c. The Opinions of Settlement Class Counsel, the Settlement Class Representative, and Absent Settlement Class Members Favor Approval of the Settlement.**

The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren* 693 F. Supp. at 1060; *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 312-13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted). Furthermore, the Court should consider the Plaintiff's opinions, and any objections, or lack thereof, from absent Settlement Class Members when deciding whether to grant final approval. *See Braynen v. Nationstar Mortg., LLC,* 2015 U.S. Dist. LEXIS 151744, at *6 (S.D. Fla. Nov. 9, 2015).

Because the Settlement provides significant relief to the Settlement Class without the risks inherent in continued litigation, Settlement Class Counsel are confident that it is in the best interest of the Class. Joint Decl. ¶ 10. Further, the reaction of the Settlement Class has been overwhelmingly positive. As mentioned above, there have been no objections and zero opt-outs; a strong indication that the Settlement is fair, reasonable, and adequate. *See* Admin. Decl. ¶ 14; *see also Hall v. Bank of Am., N.A.,* No. 1:12-cv-22700-FAM, 2014 U.S. Dist. LEXIS 177155, at *20 (S.D. Fla. Dec. 17, 2014) (declaring that a finding of reasonableness and fairness is warranted when (amongst other satisfied elements) the objections from settlement class members constitute a very small percentage and where no state regulator has objected); *Hamilton v. SunTrust Mortg. Inc.,* No. 13-60749-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 154762, at *11 (S.D. Fla. Oct. 24, 2014) ("The Court considers the reaction of the class, as well as the reaction of the various state attorney generals and regulators, to the proposed settlement to be an important indicator as to its reasonableness and fairness.").

**d. There are No Side Agreements Weighing Against Final Approval.**

Rule 23(e)(2)(C)(iv) requires the Court to consider any side agreements that must be disclosed under Rule 23(e)(3). Here, there are no side agreements among

the Parties.

**e. The Settlement Treats Class Members Equitably.**

The Court must also consider whether the Settlement treats Settlement Class Members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). In the instant matter, the Settlement treats all Settlement Class Members equitably, offering every Member of the Settlement Class the opportunity to elect the same Settlement benefits: repayment for documented losses, out-of-pocket expenses, and attested time spent remedying consequences of the Incident. *See* S.A. § 2.5. Because all Settlement Class Members are treated the same relative to one another, Rule 23(e)(2)(D) favors approval. Thus, Plaintiff respectfully submits that the Settlement Class satisfies all the requirements for final approval.

## IV. CONCLUSION

Plaintiff respectfully requests that the Court: (i) finally approve the Settlement; (ii) finally certify the Settlement Class; (iii) finally appoint Plaintiff John Berry as Class Representative; (iv) finally appoint Nicholas A. Migliaccio of Migliaccio & Rathod LLP and Scott D. Hirsch of the Scott Hirsch Law Group, PLLC as Class Counsel; (v) find the Notice Program as implemented satisfies Rule 23 and Due Process; (vi) finally appoint Simpluris as the Settlement Administrator; (vii) grant Plaintiff's request

for $216,666.67 in attorneys' fees and $13,65075 in expenses; and (viii) dismiss the action with prejudice.

Dated: October 24, 2025

Respectfully submitted,

*/s/ Nicholas A. Migliaccio*
Nicholas A. Migliaccio
**MIGLIACCIO & RATHOD LLP**
412 H. St. NE, Ste. #302
Washington, D.C. 20002
Telephone: 202-470-3520
Facsimile: 202-800-2730
Email: nmigliaccio@classlawdc.com

Scott D. Hirsch
**SCOTT HIRSCH LAW GROUP, PLLC**
Fla. Bar No. 50833
6810 N. State Road 7
Coconut Creek, FL 33073
Tel: (561) 569-6283
Email: scott@scotthirschlawgroup.com

## LOCAL RULE 3.01(g) CERTIFICATION

In accord with Local Rule 3.01(g), Plaintiff's Counsel conferred with Refresco regarding the relief requested in this motion and Refresco does not object to the relief sought herein other than to the amount of attorneys' fees, which Refresco reserves the right to oppose. Furthermore, and consistent with Section II of the Settlement Agreement, such non-opposition shall not be construed as an admission of liability or an admission of any claim or defense.

Dated: October 24, 2025

Respectfully submitted,

*/s/ Nicholas A. Migliaccio*
Nicholas A. Migliaccio
**MIGLIACCIO & RATHOD LLP**
412 H. St. NE, Ste. #302
Washington, D.C. 20002
Telephone: 202-470-3520
Facsimile: 202-800-2730
Email: nmigliaccio@classlawdc.com

Scott D. Hirsch
**SCOTT HIRSCH LAW GROUP, PLLC**
Fla. Bar No. 50833
6810 N. State Road 7
Coconut Creek, FL 33073
Tel: (561) 569-6283
Email: scott@scotthirschlawgroup.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 24, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Nicholas A. Migliaccio*
Nicholas A. Migliaccio