UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN BERRY, individually and
on behalf of all others similarly situated,

Plaintiff,

v. Case No. 8:23-cv-2763-SPF

REFRESCO BEVERAGES US INC.,

Defendant.
_______________________________________/

# ORDER

Plaintiff and Class Representative John Berry, a former employee of a company since acquired by Defendant Refresco Beverages US Inc. ("Refresco"), alleges the employer failed to adequately protect his and other class members' personally identifiable information ("PII") and protected health information ("PHI") (collectively, Private Information) (Doc. 23, Amend. Cmplt. at ¶ 1). A March 2023 cyberattack on Refresco's computer systems compromised the Private Information of approximately 25,000 Refresco employees and former employees nationwide (*Id*. at ¶¶ 4-5). Plaintiff, on behalf of himself and all others similarly situated, sued Refresco in December 2023 and amended his complaint in February 2024, alleging negligence, breach of contract, breach of fiduciary duty, and other claims. The parties settled in December 2024 (*see* Doc. 40).

The Court granted Plaintiff's unopposed motion for preliminary approval of the class action settlement and preliminarily certified the class. After that, the parties consented to the undersigned's jurisdiction (*see* Doc. 59), and Plaintiff moved for final approval of the parties' class action settlement (Doc. 61) and an award of attorneys' fees and expenses (Doc. 62, 72,

76). Defendant does not oppose Plaintiff's final approval motion but argues that the Court should award Plaintiff 20% of the settlement fund in attorneys' fees, rather than the 33% Plaintiff requests (Doc. 68). The Court held a final approval hearing (Docs. 74, 75). For the reasons stated here, Plaintiff's Motion for Final Approval of Class Action Settlement (Doc. 61) and Motion for Attorneys' Fees and Expenses Award (Doc. 62) are GRANTED.

## I. BACKGROUND

### A. Amended Complaint

Plaintiff John Berry worked for Cott Beverages, a beverage manufacturing company acquired by Refresco, from December 2015 through February 2018 (Doc. 23 at ¶ 46). To get hired and to participate in the company's healthcare plan, Berry provided his Private Information to Refresco, including his name, date of birth, Social Security number, street address, bank account number, driver's license number, and health information (*Id*. at ¶ 26). In May 2023, Refresco learned that hackers had broken into its computer systems months earlier in March 2023. Immediately after learning of the cyberattack, Refresco hired a cybersecurity investigation firm. But figuring out which information was affected by the attack took time – in November 2023, Refresco first notified its employees and former employees of a data breach and that their Private Information may have been compromised (*Id*. at ¶ 38).

On behalf of a nationwide class defined as "[a]ll persons whose Private Information was compromised as a result of the Data Breach discovered on or about May 14, 2023, and who were sent notice of the Data Breach[,]" Plaintiff contends that Refresco failed to maintain reasonable and adequate safeguards to secure the Private Information stored in its systems,

which led directly to the data breach (*Id*. at ¶ 148).[1] In Plaintiff's class action complaint, he sued Refresco for negligence, breach of contract, breach of fiduciary duty, and violating Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), among other causes of action. On the class's behalf, Plaintiff sought equitable and declaratory relief, damages, and attorneys' fees and costs.

**B. Procedural History**

Refresco moved to dismiss Plaintiff's Amended Complaint for failure to state a claim and lack of standing in February 2024 (Doc. 28). Plaintiff timely responded (Doc. 30). Then, in late March 2024, Refresco withdrew its motion to dismiss upon "investigat[ing] Plaintiff's harm allegations concerning his Social Security number" (Doc. 31 at 1) and filed an Answer (Doc. 36). After exchanging informal discovery, the parties mediated in June 2024 but were unsuccessful (Doc. 44 at 3). They continued negotiating, however, and reached an agreement in December 2024 (Doc. 51-1). Under the agreement, Refresco would deposit $650,000 into a non-reversionary settlement fund for class members, and the parties would use this amount to pay all class claims, administrative costs, and attorneys' fees and expenses (*Id.*).

In accordance with Rule 23(e), Plaintiff filed an unopposed motion for preliminary approval of the Class Action Settlement (Doc. 40). After a hearing, the Court denied Plaintiff's motion without prejudice (Doc. 49). Plaintiff revised the settlement documents to address the concerns the Court's expressed at the hearing and refiled the preliminary approval

[1] In the Amended Complaint, Plaintiff also sued Refresco on behalf of a subclass limited to California residents (Amend. Cmplt. at ¶¶ 149, 223-27). Both the Class Settlement Agreement and the Final Approval Motion identify only a nationwide class.

motion (Doc. 51). In a Report and Recommendation, the undersigned recommended that the District Judge grant the preliminary approval motion and preliminarily certify the class for settlement purposes (Doc. 53). The District Judge adopted the Report and Recommendation and granted the motion (Doc. 54).

After that, the parties consented to the undersigned's jurisdiction, Plaintiff implemented the Notice Program as agreed to in the settlement documents, and Plaintiff filed an unopposed final approval motion and a separate attorneys' fees motion (which Defendant opposes) (Docs. 61, 62, 68, 72, 76). Simpluris, the Court-approved Settlement Administrator, ascertained the size of the class (21,210 individuals), developed and maintained a settlement website (www.RefrescoDataBreach.com) and a toll free telephone number with recorded answers to class members' frequently asked questions, and established a settlement post office box (Doc. 61-1, Declaration of Meagan Brunner ("Brunner Decl.") at ¶¶ 3, 5). Simpluris mailed the Court-approved postcard notice to the 21,210 Settlement Class Members (*Id.* at ¶ 7). Of those direct mailings, 536 notices were returned as undeliverable; overall, 97.49% of Settlement Class Members were directly notified of the settlement (*Id.* at ¶¶ 9, 10). Simpluris received 331 Settlement Claims from class members, no requests for exclusion, and no objections to the proposed settlement (*Id.* at ¶¶ 14-15).

The Court held a final approval hearing on December 16, 2026, at which no objectors appeared. Plaintiff asks the Court to: (1) finally approve the Class Settlement Agreement (Doc. 51-2); (2) finally certify the Settlement Class; (3) finally appoint Plaintiff John Berry as Class Representative; (4) finally appoint Plaintiff's counsel, Nicholas A. Migliaccio of Migliaccio & Rathod LLP and Scott D. Hirsch of the Scott Hirsch Law Group, PLLC, as

Class Counsel; (5) find the Notice Program, as implemented, satisfies Rule 23 and due process; (6) finally appoint Simpluris as the Settlement Administrator; (7) grant Plaintiff's request for $216,666.67 in attorneys' fees and $13,650.75 in expenses; and (8) dismiss the action with prejudice (Doc. 61 at 18-19).[2]

**C. The Settlement**

The Class Settlement Agreement defines the Settlement Class as:

> [A]ll persons Refresco identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach. Excluded from the Settlement Class are any judge presiding over this matter and any members of their first-degree relatives, judicial staff, Refresco's officers, directors, and members, and persons who timely and validly request exclusion from the Settlement Class.

(Doc. 51-2 at 15). The Class Settlement Agreement resolves all claims in this action. It requires Defendant to deposit $650,000.00 into the Net Settlement Fund[3] to be distributed to eligible Settlement Class Members who submit valid and timely claims (Doc. 51-2 at 20). Settlement Class Members may recover: Out-of-Pocket Expenses ("OOP") up to $500.00 (with specific supporting documentation); up to $5,000.00 for a Documented Extraordinary

---

[2] The exhibits to the Final Approval Motion (Doc. 61-1 and -2) are: the Brunner Declaration; the CAFA notice; the Long Notice and Short Notice forms; the settlement claim form; and Plaintiff's counsels' declarations. The Class Settlement Agreement is in the docket at Doc. 51-2 and incorporated into this Order. The definitions in Section III(1) of the Class Settlement Agreement are incorporated into this Order, and capitalized terms in this Order have the meanings assigned to them in the Class Settlement Agreement (*see* Doc. 51 at 6-17).

[3] The Settlement defines "Net Settlement Fund" as "the amount of funds that remains in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for Settlement Costs." (Doc. 51-2 at 10). "Settlement Costs" are "all costs of the settlement including the costs of carrying out the Notice Program ... Claims Administration, any Attorneys' Fees and Expenses Award, and all other expenses or costs related to the Settlement." (*Id*. at 15).

Loss ("DL") (supported by a Claim Form, claimant attestation, and Reasonable Documentation and subject to Settlement Administrator's discretion); and/or Attested Time Spent for up to five hours of lost time at $20.00 per hour (*Id*. at 20-23). The Settlement Administrator has the authority to determine if individual Settlement Claims "reflect valid Unreimbursed Losses actually incurred that are fairly traceable to the Incident" and verify that each person submitting a Settlement Claim is a Settlement Class Member (*Id*. at 23). Under the Settlement, all Settlement Class Members must discharge Refresco from all Released Claims. The release occurs on the Effective Date, when all events and conditions of the Settlement have been met, and the Final Approval Order and Judgment are final (*Id*. at 7-8).

"The Settlement is designed to exhaust the Settlement Fund" with these expenses reducing it (*Id*. at 24): the Settlement Administrator's expenses (which Simpluris attests are $25,839.00, Brunner Decl. at ¶ 16), Class Counsel's attorney's fees not to exceed one-third of the Settlement Funds (or $216,666.67) and costs (approximately $13,650.75), and taxes (*Id*. at 40). The amount remaining after these payments is the Net Settlement Fund (*Id*. at 10).

Out of the Net Settlement Fund, valid claims for DL and OOP are paid first. After that, the amount remaining (the "Post DL/OOP Net Settlement Fund") will be distributed to pay Attested Time Spent claims pro rata until no more than 10% of the Post DL/OOP Net Settlement Fund remains. When the Post DL/OOP Net Settlement Fund is reduced to no more than 10% of the Net Settlement Fund, the Settlement Administrator may award that amount to Refresco's UA 401(k) Savings and Retirement Plan as a *cy pres* award (*Id*. at 24-25).

With Court approval, Simpluris implemented the Notice Program, utilizing direct notice to all Settlement Class Members whose addresses were available from Defendant's employment records. Simpluris also launched a Settlement Website that included details about the Settlement, documents from the case, the Class Settlement Agreement, and instructions for submitting a claim electronically. It established a toll-free number with pre-recorded answers to frequently asked questions about the case, along with a post office box. Simpluris will determine the validity of each claim and will distribute funds to eligible claimants beginning 90 days after the Effective Date or the date on which it has processed all Claims Forms, whichever is later (Doc. 51-2 at 24).

## II. OVERVIEW OF APPLICABLE LAW

In considering the motion for final approval, the Court must revisit the propriety of class certification for settlement purposes and whether the Class Settlement Agreement includes a fair and reasonable method for distributing the Net Settlement Fund. In a certification-for-settlement scenario like this, whether certification of the settlement class is appropriate under Rule 23 is the threshold issue. *Diakos v. HSS Sys., LLC*, 137 F.Supp.3d 1300, 1306 (S.D. Fla. 2015). Class certification is proper when the proposed class meets all the requirements of Rule 23(a) and one or more subsections of Rule 23(b). *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019). The Eleventh Circuit also requires that the class representative has standing to sue and that the proposed class is adequately defined and clearly ascertainable. *See Prado-Steiman ex rel Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

Only once a court decides a class should be certified does it analyze whether the proposed class settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To do so, the Court considers whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). And the Eleventh Circuit "instruct[s] district courts to consider several additional factors." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). They are:

> there was no fraud or collusion in arriving at the settlement and … the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986 (the "*Bennett* factors").

Here, even though the parties settled the case before the Court certified it as a class action, the Court must still determine whether the proposed Settlement Class satisfies Rule 23's certification requirements, albeit for settlement purposes only. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997). The Court must be satisfied that the class representative has standing to sue and that the proposed class "is 'adequately defined and clearly ascertainable.'" *Little*, 691 F.3d at 1304 (quoting *DeBremaecker v. Short*, 433 F.2d 733,

734 (5th Cir. 1970)); *Prado-Steiman ex rel Prado*, 221 F.3d at 1279. Consistent with the Court's preliminary class certification, the Court finds that final certification of the Settlement Class is appropriate.

## III. CLASS CERTIFICATION REQUIREMENTS

The Court first determines if the proposed Settlement Class satisfies Rule 23. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class – *i.e.,* all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied – except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial." *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 659 (S.D. Fla. 2011). "Rule 23(a) requires (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)-(4). Rule 23(b)(3) (the subsection under which Plaintiff proceeds) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A. Standing

Before the Court analyzes Rule 23(a)'s requirements, "any analysis of class certification must begin with the issue of standing." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). For standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted). "In plainer language, the plaintiff needs to show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (en banc).

The court must ascertain if the named plaintiff has standing even if the parties have settled. *Muransky*, 979 F.3d at 924 (noting that the requirement of standing "applies equally in the class action setting" and that a district court is "'powerless to approve a proposed class settlement' if 'no named plaintiff has standing.'") (quoting *Frank v. Gaos*, 139 S.Ct. 1041, 1046 (2019)). Additionally, courts in the Eleventh Circuit abide by the "basic principle that at the class certification stage only the named plaintiffs need have standing." *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 888 (11th Cir. 2023) (footnote omitted); *see also Equifax*, 999 F.3d at 1261 ("[O]nly one named plaintiff must have standing as to any particular claim in order for it to advance."). To have standing to represent a class, a named plaintiff must "be part of the class and possess the same interest and suffer the same injury as the class members." *Prado-Steiman ex rel Prado*, 221 F.3d at 1279 (citation omitted); *see also Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1307 (11th Cir. 2008).

At the pleading stage, "general factual allegations of injury can suffice," if they "plausibly and clearly allege a concrete injury."[4] *Id.* (citations and quotations omitted);

[4] A court in this judicial district has emphasized the "tension" between the constitutional necessity that each plaintiff must prove standing before he or she is awarded relief and the notion of a certification-for-settlement class, "the basic purpose of which is to permit quick(er) mass litigation under appropriate circumstances but without the attendant discovery and trial burdens." *DiPierro v. Fla. Health Sci. Ctr., Inc.*, 737 F.Supp.3d 1314, 1320 (M.D. Fla. 2024). The *DiPierro* court characterized the standard of proof for standing at the certification-to-settle stage as an open question, while acknowledging the Eleventh Circuit has "'assume[d] without

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 422-23 (2021) (plaintiff must allege an "injury in fact that is concrete, particularized, and actual or imminent" to plead the first element of standing). "But this does not mean that any allegations of injury can push a plaintiff across the standing threshold." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021). In data breach litigation, the Eleventh Circuit has held that "a plaintiff whose personal information is subject to a data breach can establish a concrete injury for purposes of Article III standing if, because of the breach, he experiences 'misuse' of his data in some way." *Green-Cooper*, 73 F.4th at 889 (quoting *Tsao*, 986 F.3d at 1343).

Here, Refresco challenged Plaintiff's standing in its motion to dismiss. It argued Plaintiff's Amended Complaint "did not identify a single misuse of customer data, 'much less any misuse . . . causing any of the customers any actual injury.'" (Doc. 28 at 10-11, quoting *Tsao*, 986 F.3d at 1336). Refresco ultimately withdrew its motion to dismiss before a ruling, however, because "additional investigation [into the data breach] suggested that Plaintiff's Social Security number may have been impacted." (Doc. 31 at 2). This is not dispositive of the issue, as the Court maintains an independent obligation to evaluate standing to ensure that federal subject matter jurisdiction exists. *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

In *Tsao*, the Eleventh Circuit found that "evidence of actual misuse is not necessary for [an individual] plaintiff to establish standing following a data breach." *Tsao*, 986 F.3d at 1343. But "without specific evidence of *some* misuse of class members' data, a named

---

deciding that the applicable standard [for demonstrating standing in such cases] is a pleading standard.'" *Id*. (quoting *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1254 (11th Cir. 2023).

plaintiff's burden to plausibly plead factual allegations sufficient to show that the threatened harm of future identity theft was 'certainly impeding' – or that there was a 'substantial risk' of such harm – will be difficult to meet." *Id.* at 1344 (citation omitted) (emphasis in original). The *Tsao* named plaintiff lacked standing because he asserted only conclusory and threadbare allegations that class members had suffered unauthorized credit card charges traceable to the data breach and were exposed to "continued increased risk" of identity theft. *Id.* at 1343.

In his response to Refresco's motion to dismiss, Plaintiff relied on *Green-Cooper*, 73 F.4th at 888, a post-*Tsao* data breach class action in which the Eleventh Circuit found standing existed. In *Green-Cooper*, the three named plaintiffs alleged that their credit card and personal information were stolen and placed for sale on the dark web. The Eleventh Circuit found that this constituted an allegation of a concrete injury sufficient for Article III standing, because the alleged misuse "establishes both a present injury – credit card data and personal information floating around on the dark web – and a substantial risk of future injury – future misuse of personal information associated with the hacked credit card." *Id.* at 889-90.

As the Court explained at the preliminary certification and approval stage, this case is more like *Green-Cooper* and less like *Tsao*. Plaintiff alleges in his Amended Complaint that Discover contacted him twice after the March 2023 cyberattack (once in September 2023 and again in December 2023) to tell him his Social Security number had been compromised and found on the dark web (Doc. 23 at ¶¶ 54-57). After that, he paid $119.85 for credit monitoring services (Doc. 51-1 at 4). This type of misuse (a stolen Social Security number available on the dark web) was missing from the plaintiff's allegations in Tsao but present in *Green-Cooper*. Plaintiff has standing to bring his allegations.

### B. Rule 23(a) Requirements

#### 1. Numerosity

Next, Plaintiff must satisfy Rule 23(a)'s four requirements. Under Rule 23(a)(1), a plaintiff must show the settlement class is so numerous that joinder is impracticable. *See* Fed. R. Civ. P. 23(a)(1). This requirement is "a generally low hurdle" and "less than twenty-one is inadequate … [and] more than forty is adequate…" *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (internal quotations and citation omitted). The Settlement Class consists of approximately 21,210 people nationwide (Brunner Decl. at ¶ 5). This is the number of employees and former employees Refresco notified of the March 2023 data breach, minus the 536 notices that were returned as undeliverable (*Id*. at ¶ 9). This number satisfies the numerosity requirement for settlement purposes.

#### 2. Commonality

Rule 23(a)(2) requires a plaintiff to show "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A plaintiff must "demonstrate that the class members have suffered the same injury," and that "[t]heir claims ... depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotations and citation omitted). A "common contention" is a contention "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350 (internal quotations and citation omitted). Although the exact claim or statutory violation need not be the same for all class members, "there [must] be at least one issue whose resolution will affect

all or a significant number of the putative class members." *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 788 (11th Cir. 2014) (per curiam) (citation omitted).[5]

Here, among the common questions of law are: "(1) [w]hether Defendant's data breach security systems prior to and during the Data Breach complied with applicable data security laws and regulations;" (2) whether Refresco implemented these security measures "to protect Plaintiff and the Class's Private Information from unauthorized capture, dissemination, and misuse;" (3) if Refresco took "reasonable measures to determine the extent of the Data Breach[.]" (Doc. 23 at ¶ 155). Resolving these issues will affect all (or close to all) Settlement Class Members; Rule 23(a)(2)'s commonality requirement is satisfied for settlement purposes.

**3. Typicality**

Rule 23(a)(3) requires that a plaintiff's claims be typical of the claims of the settlement class. Fed. R. Civ. P. 23(a)(3). This requirement "measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) (citation omitted). Class members' claims need not be identical to satisfy this requirement. *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012). Instead, "[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).

---

[5] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

Plaintiff's claims are typical of the proposed Settlement Class because they concern the same purportedly inadequate data security measures, arise out of the same purported data security lapses, and assert the same harm and entitlement to relief. These allegations establish a sufficient nexus between Plaintiff's claims and those of the class; the Settlement Class meets the typicality requirement. *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (stating that named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").

**4. Adequacy of Representation**

Finally, Rule 23(a)(4) requires that "the representative parties … fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[C]lass counsel and the class representatives are adequate representatives of the class if (1) 'plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation' and (2) the plaintiffs lack 'interests antagonistic to those of the rest of the class.'" *Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-T-23MAP, 2009 WL 4015573, at *2 (M.D. Fla. Nov. 19, 2009) (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987)).

Here, Plaintiff is an adequate class representative. He has standing (discussed above), is a member of the Settlement Class he seeks to represent, and the Court is not aware of any antagonistic interests between Plaintiff and the Settlement Class Members. Likewise, the Court is satisfied that Attorneys Scott Hirsch of Scott Hirsch Law Group, PLLC and Nicholas Magliaccio of Migliaccio & Rathod LLP possess the qualifications and experience to undertake this class action litigation and serve as counsel for the Settlement Class (*see* Docs. 51-9, -10). *See Dukes v. Air Canada*, No. 8:18-cv-2176-T-17JSS, 2019 WL 8358700, at *4 (M.D.

Fla. Sept. 6, 2019) (finding adequacy of representation requirement where "Plaintiff and the Settlement Class seek redress of the same alleged wrong" and "Plaintiff's counsel understands the claims in this case and possesses class action experience"). Rule 23(a)(4)'s adequacy requirement is satisfied.

**C. Rule 23(b) Requirements**

Next, the proposed class must fall into at least one of the three categories listed by Rule 23(b) as a prerequisite to class certification. Plaintiff relies on Rule 23(b)(3), which requires the court to consider if: (a) "the questions of law or fact common to class members predominate over any questions affecting only individual class members;" and (b) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**1. Predominance**

A predominance inquiry looks at "the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem Prods.*, 521 U.S. at 623. To satisfy Rule 23(b)(3)'s predominance prong, a court must find that issues subject to generalized proof applicable to the class as a whole "predominate over those issues that are subject only to individualized proof." *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (quotation omitted). This calls for "a pragmatic assessment of the entire action and all the issues involved." *Cordoba*, 942 F.3d at 1274 (citation omitted). "'[C]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *Id*. (quoting *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir.

2016)). Common issues will not predominate "'if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'" *Id.*

As the Court noted at the preliminary approval stage, the key issue is whether the data breach compromised Plaintiff's and the Class Members' PII. This determination is central to resolving all Settlement Class Members' claims and is subject to generalized proof. Each of Plaintiff's class claims derives from these alleged facts: (1) Refresco maintained Class Members' Private Information on its computer network; (2) Refresco had a duty to safeguard this information; (3) Refresco did not fulfill this duty, which resulted in the Data Breach; and (4) all Settlement Class Members were harmed similarly. There are few, if any, individualized issues involved. Plaintiff satisfies the predominance prong.

**2. Superiority**

To satisfy the superiority requirement of Rule 23(b)(3), a movant must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Pertinent to the consideration of superiority are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Here, regarding the first factor, under the Class Settlement Agreement, the recovery for individual Settlement Class Members who submit valid and timely claims will not exceed $5,600.00. Considering this relatively modest amount, class members likely would not be

incentivized to bring individual lawsuits. *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)). The second and third factors also favor class certification – Plaintiff represents that no other member of the proposed Settlement Class has brought any individual claim against Refresco related to the Data Breach, and the Middle District of Florida is well-suited to either litigate this case or effect the nationwide settlement. Regarding the fourth factor, the fact of settlement obviates the need to "inquire whether the case, if tried, would present intractable management problems, [since] the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (citation omitted). The alternative is for the Court to manage potentially thousands of individual claims for damages stemming from the same data breach, which would be an inefficient use of judicial resources. For purposes of class settlement, a class action is the superior method for adjudicating these claims.

**D. Adequately Defined and Clearly Ascertainable**

Finally, a class must be "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). A plaintiff must show the "class definition contains objective criteria that allow for class members to be identified in an administratively feasible way." *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015). The identification of "class members is administratively feasible when it is a management process that does not require much, if any, individual inquiry." *Id.* (internal quotations omitted).

Here, Defendant cooperated by providing the Settlement Administrator with records containing the names and mailing addresses of 23,491 individuals (2,281 were duplicate records), and from this Simpluris ascertained that there are 21,210 Settlement Class Members (Brunner Decl. at ¶ 5). The Settlement Class is adequately defined and clearly ascertainable.

To recap, the Settlement Class satisfies Rule 23(a) and (b), Plaintiff has standing, and the class of 21,210 members is adequately defined and clearly ascertainable. The class is finally certified for settlement.

## IV. FAIRNESS OF THE AGREEMENT

With Rule 23 satisfied as to preliminary class certification, the Court segues into determining if the Class Settlement Agreement is fair, adequate, and reasonable under Rule 23(e)(2) and the corresponding *Bennett* factors. Courts have substantial discretion in approving a settlement agreement. *Bennett*, 737 F.2d at 986. In exercising this discretion, courts consider the "strong judicial policy favoring settlement as well as . . . the realization that compromise is the essence of settlement." *Id.* (citation omitted). Courts also "give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks." *Pierre-Val v. Buccaneers Ltd. P'ship*, No. 8:14-cv-1182-CEH-EAJ, 2015 WL 3776918, at *1 (M.D. Fla. June 17, 2015) (citations omitted).

Here, regarding the first two Rule 23(e)(2) factors and the analogous *Bennett* criteria, Plaintiff and his counsel have vigorously represented the Settlement Class. The parties negotiated the Class Settlement Agreement after investigating the facts and merits of Plaintiff's legal claims and defenses. Defendant filed a motion to dismiss, and Plaintiff's

response to the motion convinced Defendant to withdraw the motion and its standing argument. The parties have conducted discovery commensurate with this stage of the proceeding. *See Estate of Dolby ex rel. Koenig v. Butler & Hosch, P.A.,* No. 8:03-CV-2246-T-23TGW, 2006 WL 2474062, at *6 (M.D. Fla. Aug. 25, 2006) ("The proposed settlement is occurring early enough in the litigation that significant litigation fees and costs will be avoided, but not so early that counsel lacked sufficient information to make an informed decision."). In short, the parties can adequately assess the strengths and weaknesses of their respective positions and the benefits of settling.

Additionally, Plaintiff's counsel is well-versed in class actions, including data breach class actions. Plaintiff has actively participated, including assisting his counsel whenever necessary. And the Class Settlement Agreement was negotiated at arm's length by attorneys acting in their respective clients' best interests during a rigorous, hours-long mediation conducted by a well-respected and experienced mediator and finalized after many hours of follow-up negotiations over months. *See Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) (noting that the assistance of an experienced mediator supported approval of class action settlement). There is no evidence of collusion between the parties or bad faith by either side. *See In re Mednax Servs.*, No. 21-MD-2994-RAR, 2024 WL 1554329, at *6 (S.D. Fla. Apr. 10, 2024).

Next is Rule 23(e)(2)(C) and the related *Bennett* consideration regarding the adequacy of relief awarded to the class. The court must consider: (1) the costs, risk, and delay of trial and appeal; (2) the effectiveness of the proposed method of distributing relief to the class, including the method proposed for processing claims; (3) the terms of any proposed award of

attorney's fees including the timing of such payment; and (4) the parties' settlement. Fed. R. Civ. P. 23(e)(2)(C). Here, the per-class-member award is within the range of reasonableness and approximates settlement awards approved by courts in the Eleventh Circuit in other data breach class actions. *See In re Equifax Inc. Customer Data Sec. Breach Litig*., 999 F.3d 1247, 1274 (11th Cir. 2021) (observing that remedy of credit monitoring and identity theft insurance and restoration services to class members was in the high range of what could have been obtained had the parties continued to litigate); *In re Loancare Data Sec. Breach Litig.*, 3:23-cv-1508-CRK-MCR, 2025 WL 895435 (M.D. Fla. Mar. 24, 2025) (preliminarily approving settlement agreement in data breach class action where each class member could potentially recover up to $5,000 for extraordinary losses).

Success at trial is uncertain for either side: Plaintiff stands by the merits of his claim that Refresco breached its duty to protect its employees and former employees' Private Information, while Refresco denies any liability. As in other cases involving data breaches, each step along the way to trial—discovery (including retaining expert witnesses), class certification briefing, and dispositive motion practice—is costly and risky. Put differently, Plaintiff filed this case over two years ago; settlement will eliminate the need for what likely would be an even more protracted and costly litigation, including further class certification proceedings, summary judgment motions, and trial. *See Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-cv-20880-UU, 2016 WL 10518902, at *3 (S.D. Fla. Oct. 17, 2016) (noting "ongoing discovery and trial preparation would have substantially increased costs to the Class"). The parties have retained a third-party administrator to facilitate notification and distribution of

settlement checks to Settlement Class Members. And neither the Class Settlement Agreement nor the amount of the fund depends on the Court's approval of the attorneys' fees award.

Last up is Rule 23(e)(2)(D) and the remaining *Bennett* factors. The Class Settlement Agreement treats Settlement Class Members equitably relative to one another – each of the 21,210 Settlement Class Members can submit a claim for DL and OOP expenses and Attested Time Spent. If a claim is documented (as explained in the Class Settlement Agreement) and the Settlement Administrator confirms class membership, the claimant will receive payment via digital means or a check. The Class Release provision operates equitably, too: it provides that all Settlement Class Members "shall be barred from initiating, asserting, or prosecuting against Refresco and any Released Parties any claims that are released by operation of the Class Settlement Agreement and the Final Approval Order and Judgment." (Doc. 51-2 at 40). "Released Claims," in turn, means "all causes of action and claims for relief that have been asserted, or could have been asserted, by any Settlement Class Member, including Representative Plaintiff, against any of the Released Parties" based on the Data Breach (*Id.* at 12). *See* Fed. R. Civ. P. 23, advisory committee's notes to 2018 amendments (stating courts should consider "whether the scope of the release may affect class members in different ways that bear on the apportionment of relief").

Regarding the amount of opposition to the Settlement (the fifth *Bennett* factor), this weighs heavily in favor of the Settlement being fair and reasonable, as there have been no objections or requests for exclusion, and no one in opposition to the Settlement appeared at the hearing (Brunner Decl. at ¶ 14). *See Lipuna v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (the "reaction of the class is an important factor" in determining whether a

proposed settlement is fair, reasonable, and adequate). As of October 20, 2025 (when Simpluris submitted Brunner's Declaration to support the Final Approval Motion, Doc. 61-1), the Settlement Administrator had sent 21,210 Postcard Notices to Settlement Class Members (*Id*. at ¶ 7). The Settlement Administrator attests to reaching 97.49% of the Settlement Class via direct notice (*Id*. at ¶ 10). Since then, 331 claims have been filed, there have been zero objections, and no class members have opted out of the settlement (the deadline for claims submission was December 4, 2025) (*Id*.). Considering this and the strong judicial policy favoring settlement, the Court finds the Settlement to be a fair, adequate, and reasonable resolution of the class members' claims, and approves it.

## V. ADEQUACY OF NOTICE

Rule 23(e) requires a court to "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), as in this case, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice must "clearly and concisely state in plain, easily understood language" the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* Rule 23 "require[s] that class members be given information reasonably necessary to make a decision whether to remain a class member and be bound by the final judgment or opt out of the action, though the notice need not include every material fact or be overly detailed."

*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (quotations, citation, and original alterations omitted).

Plaintiff prepared, and the Court approved (with minor revisions), a Short Form Notice, a Long Form Notice, and a Claim Form.[6] The Settlement Administrator sent the Postcard Notice to all 21,210 Settlement Class Members via first-class U.S. Mail (Brunner Decl. at ¶ 7). At the same time, the Settlement Administrator posted the Long Form Notice on a dedicated Settlement Website and made the relevant Settlement documents available for download (*Id*. at ¶ 11). The Settlement Administrator established a toll-free telephone number dedicated to Settlement Class Members (*see* Doc. 51-2 at 30-33; Brunner Decl. at ¶ 12). Upon consideration of the class certification requirements discussed above, these procedures were adequate and reasonable under Rule 23(e).

## VI. ATTORNEYS' FEES AND COSTS

In a class action common fund case, the burden of demonstrating that the amount of attorneys' fees is reasonable is on the party seeking them. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Here, Plaintiff asks the Court to approve his attorneys' request for fees of one-third of the $650,000.00 Settlement Fund, or $216,666.67, and litigation costs of $13,650.75 (Doc. 62). Defendant does not oppose Plaintiff's request for litigation expenses

[6] The Settlement Administrator, on Refresco's behalf, was tasked with submitting the notices required under the Class Action Fairness Act to the applicable state and federal officials, with the costs of these notices paid from the Settlement Fund (Doc. 51-2 at 33). Simpluris sent letters to the appropriate state and federal Attorneys General on August 15, 2025 (Brunner Decl. at ¶ 4).

but argues that an award of 33% of the Settlement Fund is too high, proposing that the Court award class counsel 20% of the Settlement Fund (Doc. 68).

Courts routinely use one of two methods to determine reasonableness: (1) the percentage method, or (2) the lodestar method. *See In re Home Depot Inc., Customer Data Sec. Breach Litig.*, 931 F.3d 1065, 1076 (11th Cir. 2019). The Eleventh Circuit, however, has clarified that the percentage-of-recovery method is the most appropriate for evaluating common fund fee requests. *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *see also Home Depot Inc.*, 931 F.3d at 1081 ("In common-fund cases, we have directed courts to use the percentage method.").

**1. Percentage-of Recovery Analysis**

The "majority of common fund fee awards fall between 20% to 30% of the fund." *Camden I*, 946 F.2d at 774. This is a benchmark range, and it "may be adjusted in accordance with the individual circumstances of each case." *Id.* at 775. The individual circumstances to be considered in adjusting the percentage of recovery include the twelve factors set out in *Camden I*, namely:

(1) the time and labor required;
(2) the novelty and difficulty of the questions involved;
(3) the skill requisite to perform the legal service properly;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;
(11) the nature and the length of the professional relationship with the client; and
(12) awards in similar cases.

*Id.* at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 714-19 (5th Cir. 1974)).[7] "Other pertinent factors [include] the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, … and the economics involved in prosecuting a class action." *Id*. at 775. There will also be, in most instances, additional factors unique to a particular case that will relate to the district court's determination. *Id.*

**a. Time and Labor Required**

"Although the hours claimed or spent on a case should not be the sole basis for determining a fee, … they are a necessary ingredient to be considered." *Johnson*, 488 F.2d at 717 (citation omitted). Class counsel conducted a pre-suit factual and legal investigation, drafted and filed the Complaint and Amended Complaint, researched and responded to Defendant's motion to dismiss, engaged in pre-mediation discovery with Defendant, prepared for and attended mediation and continued to negotiate once mediation did not succeed, attended court hearings, drafted the initial Settlement documents and Class Notices, drafted the motion for preliminary approval and the revised motion, coordinated with the Settlement Administrator to direct the Notice Program, and drafted Plaintiff's motions for attorneys' fees and final class approval, among other legal tasks (Doc. 61-2 ("Joint Decl.") at ¶ 18).

[7] The "time limitations imposed by the client or the circumstances" factor does not apply in this action and will not be addressed by the Court. *See Ressler v. Jacobson*, 149 F.R.D. 651, 655 (M.D. Fla. 1992) (finding this factor "not directly applicable").

Although Defendant points out that this Court awarded class counsel 33% of the common fund in a case that Defendant characterizes as requiring "multitudes more work" than this case, the comparison is inapposite (Doc. 68 at 4-5, citing *In re Health Insurance Innovations Securities Litigation*, No. 8:17-cv-2186-TPB-SPF, 2021 WL 1341881, at *10-11 (M.D. Fla. Mar. 23, 2021), *report and recommendation adopted*, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021)). Just because the Court awarded 33% to class counsel in that case does not mean that the same percentage is unwarranted here. *See Viviani v. Watson Clinic, LLP*, No. 8:24-cv-2157-SDM-LSG, 2026 WL 923367 (M.D. Fla. Apr. 6, 2026) (granting motion for final approval and awarding 33% of common fund in attorney's fees to class counsel in data breach class action). The Court finds that the time and labor devoted to this case support the requested fee award.[8]

**a. Novelty and Difficulty of the Questions Involved, the Skill Required, and the Experience, Reputation and Ability of the Attorneys**

These three factors support granting the requested fees. First, "[t]he trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work become highly important in this [skill of counsel] consideration." *Johnson*,

---

[8] Defendant argues that the number of hours Plaintiff's counsel expended in this case is too high and attributes this to over-staffing (Doc. 68 at 5). This, in turn, skews the lodestar analysis, it contends (*Id*. at 5, n.2). Although this Court weighs the time and labor this case required of Class Counsel as part of the *Camden I* analysis, in the Eleventh Circuit, a lodestar cross-check is unnecessary in determining common fund fee awards. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1280, n.26 (11th Cir. 2021); *In re Home Depot Inc.*, 931 F.3d 1065, 1091, n.25 (11th Cir. 2019). In fact, in common fund cases, courts should not impose the lodestar approach "through the back door via a 'cross-check.'" SEC v. Davison, No. 8:20-cv-325-MSS-MRM (M.D. Fla. Mar. 8, 2023), 2023 WL 2931641, at *3 (M.D. Fla. Mar. 8, 2023).

488 F.2d at 718; *see also Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988) (explaining that "reputation and experience are usually only proxies for skill, which in a rational economic environment is the ultimate determinant of compensation level"). Class Counsel practice extensively in state and federal courts, including as lead counsel in numerous class actions, and have extensive experience with data breach litigation (*see* Joint Decl. at ¶ 1; Docs. 51-9 and -10). Class Counsel has successfully litigated data breach cases in other federal district courts and has been appointed class counsel in numerous pending state and federal cases across the country (Doc. 51-9 at ¶¶ 11-16). Additionally, Defendant was represented by very capable attorneys at Shutts & Bowen (Erik Matheny) and Nixon Peabody LLP (Jason Kravitz and Leslie Hartford), who specialize in representing employers in data breach cases. *See Ressler*, 149 F.R.D. at 654 ("Moreover, in assessing quality, the Court has considered the quality of the *opposition* as well as the standing of plaintiff's counsel.").

**b. The Customary and Contingent Nature of the Fee and Preclusion of Other Employment**

The requested fee here is customary for a case such as this, *i.e.*, a class action pursued on a contingency basis. *See id.* ("The 'customary fee' in a class action is contingent, since virtually no individual plaintiff has a large enough monetary stake in the litigation to justify charging on an hourly basis."); *Morgan v. Public Storage*, 301 F.Supp.3d 1237, 1255 (S.D. Fla. Mar. 9, 2016) (awarding 33% of common fund in lass counsel fees in FDUPTA class action); *Viviani*, 2026 WL 923367 (awarding 33% of the common fund to class counsel in data breach class action); *Cain v. CGM, L.L.C. d/b/a CGM, Inc.*, No. 1:23-cv-2604-SEG, 2025 WL 2814398, at *10 (M.D. Fla. Mar. 10, 2025) (same); *Stoll v. Musculoskeletal Inst., Chartered d/b/a*

*Fla. Orthopaedic Inst.*, No. 8:20-cv-1798-CEH-AAS, 2022 WL 16927150, at *2-3 (M.D. Fla. Jul. 27, 2022) (same), *report and recommendation adopted*, 2022 WL 16923698 (M.D. Fla. Nov. 14, 2022).

The hours required to prosecute this action limited the time and resources Class Counsel devoted to other matters during this litigation. *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1365 (S.D. Fla. 2011) ("It is uncontroverted that the time spent on the Action was time that could not be spent on other matters. This factor too supports the requested fee."). Class Counsel spent hours researching, investigating, prosecuting, and managing the settlement of this case on behalf of the Class, and they have incurred out-of-pocket litigation costs. Class Counsel have had no compensation for their services since suing in 2023, and they had no guarantee that any of those funds would be reimbursed. These factors support the requested fee award.

**c. The Amount Involved and the Results Achieved**

The amount involved and the results obtained is the "most important factor" in determining an award of attorneys' fees. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204-05 (S.D. Fla. 2006); *see also Camden I*, 946 F.2d at 774 ("[A] common fund is itself the measure of success … and represents the benchmark on which a reasonable fee will be awarded …. In this context, monetary results achieved predominate over all other criteria.").

Here, Class Counsel recovered a $650,000.00 settlement on behalf of the Settlement Class. Every Class Member is eligible to receive up to $500.00 in out-of-pocket losses, up to $5,000.00 for documented extraordinary losses, and reimbursement of lost time for up to 5

hours at $20 per hour. The value per Settlement Class Member depends on the number of Claims received (and is therefore subject to a pro rata adjustment). But even if every Settlement Class Member submits a Claim, the value per Claim is $30.65. This amount will likely increase to up to $500.00, based on the claims rate to date and the typical claims rates in similar class actions. This provides meaningful monetary relief and is well within the range of reasonable settlements; in fact, it is excellent for a data breach case. *See, e.g., In re Fortra File Transfer Software Data Sec. Breach Litig.*, 794 F.Supp.3d 1203, 1212, 1215 (S.D. Fla. Feb. 11, 2025) ($7.00 per class member); *CGM*, 2025 WL 2814398, at *12 ($4.76 per class member); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-2994-RAR, 2024 WL 1554329, at *4, 7 (S.D. Fla. Apr. 10, 2024) ($2.21 per class member). The results obtained in this case are reasonable and support the requested fee award.

**d. Fee Awards in Similar Cases**

The 33% requested fee award is reasonable and consistent with fee awards granted in other data breach class actions litigated within the Eleventh Circuit. *Viviani*, 2026 WL 923367 (awarding 33% of the common fund to class counsel in data breach class action); *Cain*, 2025 WL 2814398, at *10 (same); *Stoll,* 2022 WL 16927150, at *2-3 (same); *Cornoa-Cantu v. Ingo Money, Inc.*, No. 1:24-cv-3023, 2025 WL 3567122, at * 9-10 (N.D. Ga. Jun. 17, 2025) (same)); *Gilbert v. Bioplus Specialty Pharmacy Serv., LLC*, No. 6:21-cv-2158-RBD-DCI, 2025 WL 99650, at *2 (M.D. Fla. Jan. 15, 2025) (same).

**e. The "Undesirability" of the Case**

Here, the "undesirability" of the action supports the requested fee. As discussed above, this class action required representation by experienced counsel willing to take the case

on a contingency-fee basis despite the significant legal obstacles the case presented. The prospect of engaging in and financing protracted complex litigation without a concomitant favorable recovery is not highly desirable. *See Checking Acct.*, 830 F. Supp. 2d at 1364 ("'Undesirability' and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight."); *In re Sunbeam*, 176 F. Supp. 2d at 1336 ("possible financial outcome of a case" may make a case undesirable).

**f. The Nature and Length of Relationship with the Client**

Class Counsel have represented Plaintiff for almost 3 years, and Plaintiff has been involved in all aspects of the litigation. Additionally, Plaintiff does not oppose Class Counsel's fee request. This factor supports the requested fee.

**g. Additional Factors**

The lack of objections by the Class also supports Class Counsel's fee request. No Settlement Class Member has objected to the Class Settlement Agreement or the Notice that Class Counsel may seek a fee award up to 33% of the Net Settlement Fund and reimbursement of litigation expenses. Likewise, no Settlement Class Members opted out of the Settlement. The absence of objections supports Counsel's fee and expenses requests. *See Ressler*, 149 F.R.D. at 656 ("The fact that there are no objections to either the Settlement or to Petitioners' request for attorney's fees is strong evidence of the propriety and acceptability of that request."). This positive reaction to the Class Settlement Agreement further supports the fairness of the fee request.

**2. Litigation Costs**

Class Counsel seeks reimbursement of $13,650.75 in costs, including filing fees, mediation fees, and other typical litigation expenses (Joint Decl. at ¶ 23). These costs were reasonable and necessary to properly represent Plaintiff and the Class, and Class Counsel incurred them without assurance of reimbursement. They are awarded.

## VII. CONCLUSION

The Court **ORDERS**:

1. Plaintiff's Motion for Final Approval of Class Action Settlement (Doc. 61) and Motion for Attorneys' Fees and Expenses Award (Doc. 62) are **GRANTED**;
2. The Class Settlement Agreement, including the Notice Program (Doc. 51-2), is **ADOPTED**;
3. The Settlement Class is **CERTIFIED**;
4. John Berry is **CONFIRMED** as Settlement Class Representative;
5. Nicholas Migliaccio of Migliaccio & Rathod LLP and Scott Hirsch of Scott Hirsch Law Group, PLLC are **CONFIRMED** as Settlement Class Counsel;
6. Simpluris is CONFIRMED as the Settlement Administrator;
7. The $650,000.00 Settlement Fund must first apply to (1) the costs of the Settlement Administrator; (2) Settlement Class Counsel's $216,666.67 attorneys' fee; and (3) Settlement Class Counsel's $13,650.75 in expenses. The remainder is the Net Settlement Fund, and the Settlement Administrator is directed to distribute it as follows: valid claims for DL not exceeding $5,000.00 and OOP not exceeding $500.00 are paid first. After that, the Post DL/OOP

Net Settlement Fund will be distributed to pay valid Attested Time Spent claims (for up to 5 hours of lost time at $20.00 per hour) pro rata, until no more than 10% of the Post DL/OOP Net Settlement Fund remains. When the Post DL/OOP Net Settlement Fund is reduced to no more than 10% of the Net Settlement Fund, the Settlement Administrator may award that amount to Refresco's UA 401(k) Savings and Retirement Plan as a *cy pres* award.

8. The Class Settlement Agreement binds all Settlement Class Members, and the district court retains jurisdiction to implement and enforce the agreement.

9. Plaintiff and each Settlement Class Member (as defined in the Class Settlement Agreement), fully, finally, and forever release, relinquish, and discharge the released claims against each released party. Plaintiff and each Settlement Class Member, either directly, indirectly, representatively, as a member of or on behalf of the public or in any capacity, are permanently barred and enjoined from commencing, prosecuting, or participating in any action or recovery in this or any other forum (other than this action) in which any released claim is asserted. Any other claim or defense Plaintiff and each Settlement Class Member might have against Defendant that is not based upon or does not arise out of this action is specifically preserved and shall not be affected by the preceding sentence.

10. This action is **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to **CLOSE** the case.

**ORDERED** in Tampa, Florida, on April 13, 2026.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE